BELL CONCRETE INDUSTRIES,
INC., Appellant,

v.

COMMONWEALTH of Kentucky, NATU-
RAL RESOURCES AND ENVIRON-
MENTAL PROTECTION CABINET,
Appellee.

No. 86–CA–1297–MR.

Court of Appeals of Kentucky.

Aug. 19, 1988.

Rehearing Denied Oct. 21, 1988.

Discretionary Review Denied
by Supreme Court March 8, 1989.

W. Patrick Hauser, Barbourville, for ap-
pellant.

Randall G. McDowell, Office of Gen.
Counsel, Frankfort, for appellee.

Before DYCHE, HAYES and
LESTER, JJ.

LESTER, Judge.

This is an appeal from a judgment af-
firming an order of the appellee imposing a
$5,500 civil penalty for appellant's failure
to obtain a permit prior to constructing a
fly ash silo at its ready mix concrete plant
in Middlesboro and for violations of the
fugitive emissions regulations.

Bell Industries' difficulties with the Cabi-
net commenced on February 23, 1982, when
an inspection revealed a violation of 401
KAR 50:035 which provides that no person
shall construct, reconstruct, alter or modify
an air pollution source unless a permit to
do so has been issued. A copy of the
inspection report was delivered to appellant
and it was orally informed of the need for a
permit. The Cabinet sent Bell a violation
Letter on February 15, 1982. On April 16,
1982, appellant requested a permit applica-
tion form and the requisite forms were
supplied. Subsequent inspections over the
next 18 months revealed other construction
permit violations but no completed permit
application was submitted until November
14, 1983.

During this same eighteen-month period,
Bell was cited for two violations of 401
KAR 63:010, the fugitive emissions regula-
tion. A formal hearing was conducted on
February 1, 1984. The hearing officer filed
his report on June 8, 1984 finding appellant
had violated 401 KAR 50:035 on three sepa-
rate occasions and 401 KAR 63:010 on two
separate occasions. A cumulative civil pen-
alty of $5,500 was recommended. Appel-
lant filed exceptions to the report. The
Secretary of the Cabinet issued a final or-
der incorporating the hearing officer's re-
port and assessing a $5,500 civil penalty.
Bell appealed to the Franklin Circuit Court
which affirmed the order. Thus the matter
comes to us.

We must examine the jurisprudence applicable to this cause for it goes beyond the parameters of KRS Ch. 224 and KAR Ch. 402 and finds as its source an enactment of the federal legislature commonly referred to as the Clean Air Act of 1963 (77 Stat. 392). Several amendments were made in 1965 and 1966 so as to extend federal control over vehicle emissions which also extended the carrot of financial grants to the states for pollution control agencies. As related by Justice Rehnquist in *Train v. Natural Resources Defense Counsel,* 421 U.S. 60, 95 S.Ct. 1470, 43 L.Ed.2d 731, 737 (1975):

> The focus shifted somewhat in the Air Quality Act of 1967, 81 Stat 485. It reiterated the premise of the earlier Clean Air Act "that the prevention and control of air pollution at its source is the primary responsibility of States and local governments." Ibid. Its provisions, however, increased the federal role in the prevention of air pollution, by according federal authorities certain powers of supervision and enforcement. But the States generally retained wide latitude to determine both the air quality standards which they would meet and the period of time in which they would do so.

> The response of the States to these manifestations of increasing congressional concern with air pollution was disappointing. Even by 1970, state planning and implementation under the Air Quality Act of 1967 had made little progress. Congress reacted by taking a stick to the States in the form of the Clean Air Amendments of 1970, Pub L 91–604, 84 Stat 1676, enacted on December 31 of that year. These Amendments sharply increased federal authority and responsibility in the continuing effort to combat air pollution. Nonetheless, the Amendments explicitly preserved the principle: "Each State shall have the primary responsibility for assuring air quality within the entire geographic area comprising such State...." § 107(a) of the Clean Air Act, as added, 84 Stat 1678, 42 USC § 1857c–2(a) [42 USCS § 1857c–2(a)]. The difference under the Amendments was that the States were no longer given any choice as to whether they would meet this responsibility. For the first time they were required to attain air quality of specified standards, and to do so within a specified period of time.

> The Amendments directed that within 30 days of their enactment the Environmental Protection Agency should publish proposed regulations describing national quality standards for the "ambient air," which is the statute's term for the outdoor air used by the general public. After allowing 90 days for comments on the proposed standards, the Agency was then obliged to promulgate such standards. § 109(a)(1) of the Clean Air Act, as added, 84 Stat 1679, USC § 1857c–4(a)(1) [42 USCS § 1857c–4(a)(1)]. The standards were to be of two general types: "primary" standards, which in the judgment of the Agency were "requisite to protect the public health," § 109(b)(1), and "secondary" standards, those that in the judgment of the Agency were "requisite to protect the public welfare from any known or anticipated adverse effects associated with the presence of such air pollutant in the ambient air." § 109(b)(2).

> Within nine months after the Agency's promulgation of primary and secondary air quality standards, each of the 50 States was required to submit to the Agency a plan designed to implement and maintain such standards within its boundaries. § 110(a)(1) of the Clean Air Act, as added, 84 Stat 1680, 42 USC § 1857c–5(a)(1) [42 USCS § 1857c–5(a)(1)]. The Agency was in turn required to approve each State's plan within four months of the deadline for submission, if it had been adopted after public hearings and if it satisfied eight general conditions set forth in § 110(a)(2).

During the interim between 1966 and 1970, it must have occurred to some person or persons familiar with the subject matter who had liaison with Congress that possibly the federal government might be subject to state inspection and permit proce-

dures so maybe the Act ought to be amended to forestall that eventuality. This was accomplished by 42 USCS § 1857f and the administrator of the federal Environmental Protection Agency had the Supreme Court explain amendment (5) to us in *Hancock v. Train,* 426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed. 2d 555 (1976), to the effect that no permit is required of Ft. Knox, Ft. Campbell, Lexington–Bluegrass Army Depot, Shawnee and Paradise Power Plants (TVA) and the Paducah Gaseous Diffusion Plant (Atomic Energy Commission facility producing enriched uranium) to pollute the air while one is required of all other citizens including the average vehicle owner together with Bell Industries. The *Train* Court, as could be expected, exhumed *McCulloch v. Maryland,* 4 Wheat 316, 4 L.Ed. 579 (1819), which sounded the death knoll for the Tenth Amendment to the U.S. Constitution. Interestingly enough, California was accorded the same treatment with regard to its water pollution program on the same day that *Hancock* was delivered (June 7, 1976). *See EPA v. State Water Resources Control Board,* 426 U.S. 200, 96 S.Ct. 2022, 48 L.Ed.2d 578 (1976).

The import of the decisions cited is that even though laudatory in nature the Clean Air Act, while purporting to tell the states they are free to adopt a State Implementation Plan (SIP) of their choice, they, nevertheless, must have that plan approved by the national EPA. *Train, supra;* 61A Am. Jur. *Pollution Control* § 57 (1981); 39A C.J.S. *Health & Environment* § 96 (1976).

▓ This jurisdiction enacted KRS Ch. 224 and by a provision of KRS 224.033 the appellee was empowered to enact regulations and with reference to fugitive emissions (air pollution), it adopted 401 KAR 63:010. This was duly submitted to the federal EPA and on November 15, 1979 (44 FR 65781) and September 18, 1980 (45 FR 62163 et. seq.), deficiencies were found in Kentucky's Particulate State Implementation Plan, Part D, and, with specificity, 401 KAR 63:010, to the effect:

Because 401 KAR 63:010 does not contain emission limitations or requirements which would insure the application of RACT to process fugitive emission sources, the regulation is unacceptable to EPA in its present form. Such a deficiency could be corrected in a number of ways. (45 FR 72168).

The EPA report concluded:

It is EPA's intent to fully approve the Kentucky revisions required under Part D, of Title I of the Clean Air Act, when the Commonwealth corrects the deficiencies discussed in this notice, and those deficiencies discussed in the November 15, 1979 Federal Register and not further explained in this notice. If these corrections are not forthcoming by October 15, 1981, EPA will act to disapprove the related plan revisions. (45 FR 62169).

Regarding 401 KAR 63:010 the Cabinet did nothing by way of revision at least through 1983 (and probably until the present time) yet knowing it had been disapproved, it cited appellant for a violation thereof. Going a step farther, it sought and obtained a portion of a civil punishment based upon what it knew was an invalid regulation. This will not be countenanced and so much of the judgment with reference to the 401 KAR 63:010 violations will be reversed.

We should point out that appellee takes the position that the error discussed above was not preserved. We note that upon appeal Bell Industries alluded to it in its petition, brief and reply brief even to the extent of including in the appendix photocopies of the appropriate pages from the Federal Register. It would appear that the circuit court overlooked the issue. We also note that in its brief to us, the Cabinet makes no mention of the validity or invalidity of the regulation.

▓ Of the several arguments presented by appellant, only one deals with the failure to obtain the requisite permits. In essence, appellant was aware from April, 1982, that it was required to obtain permits for several construction projects. Between February 23, 1982, and November 14, 1983, appellant undertook the building of three separate structures or improvements but it was not until this last mentioned date that

it submitted its completed construction permit application. Based upon the record, we find no excuse for the delay and agree with the court below and appellee in respect to the violations of 401 KAR 50:035.

Insofar as the judgment affirms the hearing officer's findings and conclusions for violation of 401 KAR 63:010, it is reversed with directions that the court make the appropriate entry directing appellee to dismiss said violations. The judgment is affirmed as to the violations of 401 KAR 50:035. The court is further directed to require the appellee to apportion the civil penalty between the violations aforesaid.

All concur.